**YELLOW TRUCK & COACH MFG. CO. v. EDMONDSON et al.**

No. 10133.

Circuit Court of Appeals, Sixth Circuit.

May 13, 1946.

Harry S. Benjamin Jr., of Detroit, Mich. (Henry M. Hogan, Harry S. Benjamin, Jr., and William J. Oldani, all of Detroit, Mich., on the brief), for appellant.

Morton A. Eden, of Detroit, Mich. (Ernest Goodman and Morton A. Eden, both of Detroit, Mich., on the brief), for appellee.

Morton Liftin, of Washington, D. C. (William S. Tyson and Bessie Margolin, both of Washington, D. C., Aaron A. Caghan, of Cleveland, Ohio, and Morton Liftin and Flora G. Chudson, both of Washington, D. C., on the brief), amici .curiæ.

Before HICKS, SIMONS and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The appellant complains of a judgment rendered against it at the suit of plant protection employees for overtime pay and penalties in pursuance of § 7(a) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 207(a). The Administrator of the Wage and Hour Division supports the judgment and has filed a brief as amicus curiæ.

The plant protection employees of the appellant were organized into three shifts, each working 8 hours a day for 6 days a week. In addition to the 8 hours per day spent on active plant protection duty the guards were required to report before going to their posts, for the purpose of changing into uniforms, attending roll calls and receiving instructions. The court found that these preliminary requirements consumed an average of 24 minutes daily. The plant protection men were paid a monthly salary. In order to find their hourly rate of pay and so to determine whether there was compliance with § 7(a), the monthly rate is reduced to a weekly rate and the weekly rate to an hourly rate by a formula promulgated by the Administrator in November, 1938, and contained in Interpretative Bulletin No. 4. Section 7(a) limits the work week to 44 hours during the first year, 42 hours during the second year and 40 hours during the third year, from the effective date of the Act, and provides that the employee shall receive compensation in excess of the hours specified at a rate not less than 1½ time the regular rate at which he is employed.

When the Wage and Hour Law went into effect on October 24, 1938, the plant protection guards were on active duty more than 44 hours per week. The appellant, expressing an intent to comply with its provisions, made an adjustment of their monthly pay to compensate for overtime in excess of 44 hours. In this adjustment, however, no consideration was given to the 24 minutes per day spent in preparation, as working time. At the trial the appellant contended that the preparation period was not working time. The court rejected its contention and found that the period was to be included in overtime and so to be compensated at a rate 1½ times the regular rate, the regular rate being based upon the adjusted monthly rate reduced to an hourly rate according to the Administrator's formula.

The appellant now concedes, at least for the purpose of this appeal, that the preparatory period is working time, as indeed it must, in view of Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89

L.Ed. 118, and Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124. Its argument, however, is that when it made its adjustment of the monthly wage to include hours in excess of 44 during the first year as overtime, it intended to comply with the law; that its failure to include preparation time within hours of work was due to a mistake of law; that the acceptance of the new monthly rate by the appellees without protest, was proof of a like mistake of law on their part, and that the mutual mistake of the parties to the wage agreement furnishes a basis for the reformation of the contract. It must be observed however, that neither in its pleadings below nor in its statement of points to be relied on in appeal, was there any suggestion that reformation was sought. The general rule, of course, is that a party may not present, in a reviewing court, a wholly new issue, as for example in Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796 and Bowles v. Marx Hide & Tallow Co., 6 Cir., 153 F.2d 146, February 6, 1946. In exceptional cases, however, an appellate court may consider questions of law neither pressed nor passed upon at the trial, Hormel v. Helvering, 312 U.S. 552, 556, 61 S. Ct. 719, 85 L.Ed. 1037, and a judgment may be correct even if rendered for the wrong reason, Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224, though it has recently been held that after an adverse decision upon a written contract the plaintiff may not maintain a second action for its reformation. Hennepin Paper Co. v. Fort Wayne Paper Co., 7 Cir., 153 F.2d 822. It appears, however, that inadequate as may have been the pleadings to support a prayer for reformation, that aspect of the appellant's defense was somehow brought to the attention of the district court because it announced as a conclusion of law that the defendants may not rewrite, alter or have reformed its contract with the plaintiffs, and so we give consideration to the present plea for reformation.

Undoubtedly, equity, or a court passing upon equitable defenses, has jurisdiction to reform a written instrument where clearly there has been mutual mistake,—that is where there has been a meet-

ing of minds, but the formal contract does not express the actual agreement. Mistake must, however, be clearly demonstrated. The mutuality in the present case is based solely upon an inference that the appellees, having been advised by the appellant that it intended to comply with the law, had, under a mistake similar to that of the appellant, accepted the wage adjustment as in compliance with the law. There is no support in the evidence for such inference. The employees were unorganized, had not bargained or discussed wages with the employer, and did not participate in the drafting of the contract. They were offered jobs or a continuation of employment and had no alternative but to accept it they wanted to work.

■ A court will not redraft a wage contract merely upon a presumption that the contracting parties contemplated compliance with law. Overnight Motor Co. v. Missel, 316 U.S. 572, 581, 62 S.Ct. 1216, 1222, 86 L.Ed. 1682, "Implication cannot mend a contract so deficient in complying with the law." Adams v. Union Dime Sav. Bank, 2 Cir., 144 F.2d 290, 292, is almost identical with the facts of the instant case. There was no proof that either party contemplated any such revised terms, nor any reason to suppose that they would have been acceptable. "Reformation of a contract which in terms violated a remedial statute would tend to frustrate the administration of the Act and contravene its policy." See also Warren-Bradshaw Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Greenberg v. Arsenal Bldg. Co., 2 Cir., 144 F.2d 292; Patsy Oil & Gas Co. v. Roberts, 10 Cir., 132 F.2d 826; Bumpus v. Continental Baking Co., 6 Cir., 124 F.2d 549, 140 A.L.R. 1258; and Seneca Coal & Coke Co. v. Lofton, 10 Cir., 136 F.2d 359.

The appellant's argument that, even without reformation of the contract, the appellees have been given overtime pay for the periods here involved, is both contradictory and non-persuasive. They say that if the hourly rate had been computed on a basis of a 51 hour work week rather than a 48 hour work week the wage per hour would have been materially less, and the monthly wage sufficient to cover overtime, but the fact remains that it was not so computed. Then they say that raises granted on November 1, 1938, October 24, 1938 and October 24, 1940, were sufficient to compensate the appellees for the insufficiency of overtime pay, but these raises were, like the original adjustment, based upon a 48 hour work week and not upon a 51 hour work week, and so fixed "the regular rate" at which the appellees were employed, by the use of the reduction formula of the Administrator. Moreover, this contention would appear to vitiate the argument presented for a reformation of the contract.

Affirmed.