ABRAHAM LEVINE AND PHYLLIS LEVINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Levine v. Commissioner
Docket No. 17978-80.
United States Tax Court
T.C. Memo 1983-342; 1983 Tax Ct. Memo LEXIS 443; 46 T.C.M. (CCH) 426; T.C.M. (RIA) 83342; June 13, 1983. Abraham Levine and Phyllis Levine, pro se. Brian Kawamoto, for the respondent. *444 SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency of $954 in petitioners' income tax for 1978. Respondent has now conceded that petitioners are entitled to deduct expenses totaling $364.69 which he previously disallowed. These were paid for fares, telephone calls, travel, parking, and teaching aids. The issues remaining for our decision are whether petitioners are entitled to deductions in excess of amounts determined by respondent for (1) travel and other business expenses, (2) sales taxes, and (3) professional dues and fees. [1]
FINDINGS OF FACT Most of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein. Petitioners Abraham Levine and *445 Phyllis Levine resided in California at the time they filed their petition in this case. During 1978 he was a professor of sociology at El Camino Community College and she was a social worker for the County of Los Angeles. They used the cash basis of accounting in the preparation of their 1978 return. From April 12 through April 15, 1978, Mr. Levine attended a conference in Spokane, Washington, sponsored by the Pacific Sociological Association. From November 15 through November 19, 1978, he attended a conference in Portland, Oregon, sponsored by the American Sociological Association Teaching Project. From September 4 through September 8, 1978, the American Sociological Association held a conference in San Francisco. Mr. and Mrs. Levine and their minor daughter, Georgiana, left Los Angeles by car on August 28, 1978, in order to attend this conference. They drove to San Francisco along an indirect, coastal route rather than taking either of two more direct inland routes, one of 377 miles and the other of 418 miles. The family stopped at San Simeon for one night. While there Mr. Levine and Georgiana toured the Hearst Castle. They then drove to Monterey, arriving there on *446 August 29, 1978. They stayed for three nights in Monterey, a coastal town, which has such attractions as California's first theater, Junipero Serra's landing place, the Stevenson House, the Casa Del Oro, the Old Custom House, and Monterey Beach. They also visited Carmel, an adjacent village located between Pebble Beach and Point Lobos, and next to the scenic route known as 17 Mile Drive. The Levines drove to Fremont on September 1, 1978. They stayed at Fremont until September 3. During their stay in Fremont, which is located approximately 50 miles from San Francisco, Mrs. Levine and the daughter visited Great America, a theme amusement park. On September 3, 1978, the family left Fremont and traveled to San Francisco, where Mr. and Mrs. Levine attended the American Sociological Association convention from September 4 through September 8, 1978. On the day the conference ended, the petitioners drove toward Los Angeles on the shortest inland route, stopped overnight in Bakersfield, and arrived in Los Angeles on September 9, 1978. Petitioners kept a telephone in their home during 1978, at a monthly cost, excluding long distance calls, of $10.40. Mrs. Levine was sometimes *447 called at home as part of her employment as a social worker. However, she could also be contacted with a "beeper" which she carried at all times. During 1978, petitioners purchased a new car and some video equipment on which they paid state sales tax. They did not keep sales receipts for these or most other items which they purchased during 1978.
Petitioners were members of various professional organizations during 1978. Mrs. Levine was also a member of a union in that year. Any fees that she paid to the union were deducted from her paycheck. She kept no record of the dues or fees which she paid. Respondent allowed deductions for travel and business expenses attributable to the three conferences as follows: Portland $329; Spokane $466; San Francisco $332.28. He also allowed a sales tax deduction of $828, and a deduction for professional fees and contributions of $235.He disallowed the deduction for the basic cost of the telephone service, but allowed a deduction for telephone expense in the amount of $6.64. OPINION Travel and Business Expenses
(a) Spokane and Portland Conferences
In general, taxpayers are entitled to deduct all ordinary and necessary business *448 expenses paid or incurred during the taxable year, including traveling expenses while away from home in the pursuit of business. Section 162(a). [2] However, a taxpayer who seeks to deduct any traveling expenses under section 162, including meals and lodging while away from home, must be able to substantiate those deductions. Section 274(d).Typically, he must have documentary evidence of his expenses, such as receipts and a contemporaneous record, or some evidence corroborating his own statement. See section 1.274-5, Income Tax Regs.
Respondent does not dispute that petitioners are entitled to deduct such expenses as they can substantiate for the conferences in Portland and Spokane. Petitioners have the burden of proving that they are entitled to deductions in excess of the amounts determined by respondent. Rule 142(a). [3] They have failed to satisfy their burden. Petitioners deducted $411 and $598 on their return for Mr. Levine's expenses while attending *449 the conferences in Portland and Spokane. Their receipts totalled $286 for the Portland conference and $362.67 for the Spokane conference. Respondent allowed them deductions of $329 and $466. Petitioners have not introduced any records which suggest they are entitled to deductions exceeding $286 and $362.67 for these two conferences.Their testimony was devoid of specific details as to any additional expenses. They produced no evidence to corroborate their claims that they incurred expenses greater than those which they substantiated. Respondent, however, has generously allowed petitioners to take deductions in greater amounts. Accordingly, we sustain respondent's determination.
In their brief, petitioners have attempted to substantiate additional expenses by recreating the details of the trip from memory. Under the rules of the Court, ex parte statements made in briefs do not constitute evidence and cannot be considered. Rule 143(b). See also Wisconsin Butter & Cheese Co. v. Commissioner,10 B.T.A. 852, 854 (1928). Moreover, being the uncorroborated statements of the petitioners they would not satisfy the substantiation requirements of section 274(d) even *450 if they were considered. (b) Business Nature of Trip to San Francisco
Petitioners deducted $1,244 in expenses for attending a five-day conference in San Francisco. Included in this amount was the cost of a six-day trip, taken principally along the California coast, which the petitioners embarked upon one week before the conference was scheduled to commence. Respondent allowed $332.28 of the deduction for 800 miles of travel at 17" per mile and for their expenses in San Francisco, including the cost of the meals and lodging for their daughter. However, respondent disallowed the cost of the trip up to San Francisco, including the visits to San Simeon, Monterey, Fremont and Bakersfield. As mentioned above, section 162 allows a taxpayer to take deductions for the expenses he incurs while "carrying on any trade or business." In contrast, a taxpayer may not take deductions for his personal, living, or family expenses. Section 262. Any "[e]xpenses incurred in traveling away from home (which include transportation expenses, meals, and lodging) * * * are not deductible unless they qualify as expenses deductible under section 162 * * *." Section 1.262-1(b)(5), Income Tax Regs. *451 In particular, the regulations under section 162 specify: (e) Travel away from home. (1) If an individual travels away from home primarily to obtain education the expenses of which are deductible under this section, his expenditures for travel, meals, and lodging while away from home are deductible. However, if as an incident of such trip the individual engages in some personal activity such as sightseeing, social visiting, or expenses attributable to such personal activity constitutes nondeductible personal or living expenses and is not allowable as a deduction. If the individual's travel away from hoem is primarily personal, the individual's expenditures for travel, meals, and lodging (other than meals and lodging during the time spent in participating in deductible education pursuits) are not deductible. [Emphasis added.] Section 1.162-5(e)(1), Income Tax Regs.
Respondent contends that the expenses which petitioners incurred while traveling up the California coastline during the week before the conference, and while stopping at Bakersfield on their return to Los Angeles, were personal expenses. Petitioners contend that these expenses were related to the conference. *452 Petitioners have the burden of proving that these expenses were not personal. Rule 142(a). See Welch v. Helvering,290 U.S. 111 (1933). Petitioners have failed to sustain their burden. There are two direct routes to San Francisco from Los Angeles (Interstate 5 and United States 101). On either of these routes the distance between the cities is about 400 miles. If petitioners had traveled either of these routes at an average rate of fifty-five miles per hour, and had used two hours for delays, eating and rest stops, the journey between the cities would have taken about nine hours. Instead, petitioners spent six days, or one hundred forty-four hours travelling from Los Angeles to San Francisco. The petitioners themselves were able to complete the return trip in the evening of one day and the morning of the next. These facts strongly suggest that about 135 of the 144 hours which petitioners spent travelling from Los Angeles to San Francisco, or 94 percent, were for personal, rather than business, reasons. The places at which petitioners stopped and activities in which they participated on their trip up the coast convince us that the expenses which they incurred *453 on this journey were personal in nature.They stayed at seaside towns in four of their overnight stops. They visited areas noted for scenic beauty. They toured Hearst Castle. They visited Great America, a theme amusement park. While Mr. Levine testified that the family stopped for three days in Monterey because he was ill, this does not make the visit to Monterey one for business. In sum, we are convinced that petitioners' six-day trip to San Francisco was undertaken for personal purposes. Accordingly, respondent's disallowance of these expenses is sustained. Sections 162, 262. On the return trip petitioners left San Francisco at about 6:00 p.m., shortly after the conference ended. They reached Bakersfield at 11:30 p.m., at which time Mr. Levine was tired and felt unable to drive any longer.They stayed overnight in Bakersfield and continued on to Los Angeles the next morning. Respondent contends that the expense of this overnight stay was also personal in nature.We disagree. It is unreasonable to expect petitioners to have driven until three o'clock in the morning, after leaving the conference at 6:00 p.m., in order to reach Los Angeles in one stretch. Their alternatives *454 for the return trip were (1) to spend the night that the conference ended in San Francisco, and drive to Los Angeles the next day; or (2) leave San Francisco as they did after the conference ended and make an overnight stop before finishing the journey in the morning. Either alternative reasonably included an overnight stay. Under these circumstances the cost of the meals and overnight lodging in Bakersfield are deductible under section 162. Respondent's disallowance of these expenses is not sustained. nc) Telephone Expense
Petitioners deducted $176 as telephone expense on their 1978 return. Of this amount $124.80 was attributable to the monthly base rate of $10.40 for the telephone service in their home. The balance was apparently the cost of certain long distance calls. Respondent has conceded that petitioners are entitled to a deduction of $6.64. He contends that the remaining $169.36 was neither substantiated nor related to employment. Petitioners assert that the presence of the telephone was required by Mrs. Levine's employer. They testified that they would not have had the telephone in their home if Mrs. Levine's employer had not required it. They claimed *455 that they made almost no use of the phone except for employment-related purposes. Thus, they argue that they are entitled to deduct one hundred percent of the yearly service charge as well as any additional charges for employment-related calls. We find that their claims are refuted by their own evidence. Petitioners introduced into evidence their telephone bills for three months during 1978. These bills show that during the period they made seventy-five long distance or message unit calls on their home telephone. Of these recorded calls, only eight were employment related. Petitioners introduced no evidence to suggest that they made fewer personal calls during the nine months for which they had no records. In addition, Mrs. Levine testified that her employer required that she carry a beeper on the nights she was not at her employer's premises. The use of the beeper permitted her to be contacted without the use of any particular telephone. As a result petitioners have not only failed to show that their telephone was totally business related, they have clearly established that to a substantial extent it was not business related. Moreover, there is no evidence on which we can *456 rely to apportion the base rate between business use and non-business use. See, e.g., Laurano v. Commissioner,69 T.C. 723, 725 (1978); Lockabey v. Commissioner,T.C. Memo. 1974-100. Consequently, petitioners have failed to substantiate any employment-related telephone expense in excess of the $6.64 conceded by respondent. Respondent's determination with respect to the telephone expense is sustained. Sales Tax
Petitioners claimed $930 as a deduction for sales taxes paid during 1978. Respondent allowed a deduction of $828, the $474 shown on the sales tax table plus $354 on the purchase of a new car. Section 164(a) allows a deduction for, among other taxes, state and local taxes paid during the taxable year. As a matter of administrative convenience, the Commissioner permits a taxpayer to deduct as state sales tax an amount keyed to his income as set forth in optional sales tax tables. A taxpayer is at liberty to disregard the tables and to take a deduction larger than the amount provided in the tables, but he has the burden of proving entitlement to such deduction. Petitioners have failed to produce any evidence that they paid sales *457 taxes in excess of the amount allowed by respondent. Mr. Levine testified that he purchased some "video equipment" during 1978, but gave no evidence as to the nature of or price for this equipment. Moreover, both petitioners stated plainly that they did not have any receipts for the video equipment or for most of their other purchases. On brief, they attempted to reconstruct from recollection the nature of and cost for the video equipment. We find it curious that they were later able to remember with particularity details which, at trial, escaped their recollection. In any event, as we have previously discussed, ex parte statements made on brief do not constitute evidence. Rule 143.Accordingly, we find that petitioners have failed to substantiate the payment of any sales tax in excess of the amounts allowed by respondent. Respondent's disallowance of the deduction in excess of the $828 is sustained. Professional Dues and Fees
Petitioners were members of, and contributed to, a variety of professional organizations during 1978. They claimed deductions in the amount of $862 for payments made to these organizations. Respondent determined that petitioners were entitled *458 to deduct $235, even though petitioners had receipts or checks sufficient to document only $202.20 of the claimed dues and fees. Here, as in the other issues of this case, petitioners have the burden of proof. Respondent does not contest that they are entitled to deduct such payments as they can substantiate. He simply argues that they have not substantiated deductions exceeding $235. We agree. The documentary evidence shows that petitioners paid $202.20 in professional fees and dues during 1978. Mrs. Levine testified that she also paid union dues, which were deducted from her paycheck. She did not know the amount of the dues or the frequency with which she paid them. The ex parte statements which petitioners made in their brief as to the dues are, as we have previously discussed, not evidence. Thus, the record is devoid of any evidence tending to show that petitioners paid dues or professional fees exceeding the $235 deduction allowed by respondent. Accordingly, respondent's determination was respect to this issue will be sustained. To reflect the foregoing as well as the concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. Petitioners correctly concede, on brief, that they are not entitled to deduct, as educational expenses, the repayment of student loans, the proceeds of which were used to pay such expenses in prior years. See Segall v. Commissioner,30 T.C. 734 (1958); McAdams v. Commissioner,15 T.C. 231 (1950), affd. 198 F.2d 54↩ (5th Cir. 1952).
2. All section references are to the Internal Revenue Code of 1954, as amended during the year in issue.↩
3. All rule references are to the Tax Court Rules of Practice and procedure, unless otherwise indicated.↩